ANDREW J. CROPSEY AND OTHERS, PLAINTIFFS IN ERROR, v. JULIA A. AVERILL, DEFENDANT IN ERROR.

| 8 | 151 |
|---|---|
| 9 | 316 |
| 12 | 608 |
| 14 | 240 |
| 16 | 415 |
| 17 | 152 |
| 20 | 72 |
| 8 | 151 |
| 38 | 222 |
| 8 | 151 |
| 54 | 133 |
| 8 | 151 |
| 56 | 819 |

1. **Conversion of Negotiable Securities**: DAMAGES. In an action to recover damages for the wrongful conversion of a negotiable promissory note and mortgage, it being conceded in the petition that at the time of conversion they were legally held by the defendant as security for certain advances of money to the plaintiff's son, and there being no allegation that such advances had been paid or in any way satisfied—*held*, that the utmost extent of liability, if any, was the value of the securities, less the amount due on such advances, together with interest from the time of conversion.

2. **Evidence**: OPINION OF WITNESS: OWNERSHIP. The fact of the plaintiff's ownership of negotiable securities being in issue,

it was not competent for her to testify, against objection, that she " was the owner " thereof. This was a conclusion of law to be established by proof of facts necessary to show ownership, and not by the opinion of witnesses.

3. ———: ESTOPPEL. The plaintiff, the payee of a negotiable promissory note, having formally indorsed it to her son, who afterwards pledged it to the defendant—who had no knowledge of the purpose for which the indorsement was made—as security for a loan of money, will not be permitted to contradict, or limit the legal effect of such indorsement, by showing the real purpose for which it was made.

4. **Practice :** CROSS-EXAMINATION OF WITNESS : REFERENCE TO FORMER DEPOSITION. ' It is not proper, on cross-examination of a witness, for counsel, in order to contradict him, to read from what purports to be a deposition previously given by him, and then to ask him whether he had so testified. The correct rule in such case is first to prove the deposition to be his, and then to read it as part of the evidence in the case. After this has been done the witness may be cross-examined as to any supposed discrepancies between his testimony in court and the deposition.

5. **Irrelevant Testimony.** If irrelevant testimony, which has a tendency to mislead the jury, be admitted, it is good ground for a reversal of the judgment.

6. **Instructions to Jury,** Instructions ·to the jury should have particular reference to the evidence upon which they are to pass. And it is error to so instruct as to leave them at liberty to infer a fact of which there is no proof.

7. **Practice:** LIMITING THE TIME OF COUNSEL IN ARGUMENT. If the court limit counsel in the time to be occupied in argument, and no objection is made to the order at the time, and before the case is finally submitted to the jury, it is too late afterwards to complain.

8. **Misconduct of Counsel:** GROUND OF ERROR. One ground of error assigned was the misconduct of the opposing counsel in their argument to the jury, prejudicial to the plaintiff in error. But it was not shown by the record they were called to order, nor that the court was requested to confine them within the bounds of legitimate discussion. *Held,* that while the offense complained of, if properly presented, would be good ground for a reversal of the judgment, still, as the record does not show any ruling by the court below respecting it, there is no question for this court to review.

ERROR from the district court of Lancaster county. The facts appear in the opinion.

*Lamb, Billingsley and Lambertson*, for plaintiff in error, cited Wharton on Agency, sections 71 and 72. Story on Agency, sec. 244. *Wedderspoon v. Rogers*, 32 Cal., 571. *Poorman v. Mills & Co.*, 35 Cal., 119. *White v. Brown*, 14 How. Pr., 282. *Witherspoon v. Van Dolar*, 15 How. Pr., 266. Starkie on Evidence, sec. 32. *Deshon v. Merchants Ins. Co.*, 11 Met., 209. *Miller v. Parker*, 2 Met. (Ky.), 616. *Stanton v. Miller*, 58 N. Y., 203. Proffat on Jury Trials, sec. 254. *People v. Keenan*, 13 Cal., 581. *Hunt v. The State*, 49 Georgia, 255. *Loyd v. H. & St. Jo. R. R.*, 53 Mo. 514. *Tucker v. Henniker*, 41 N. H., 317.

*D. G. Hull* (with whom was *T. M. Marquett*) for defendant in error.

LAKE, J.

The action below was for the recovery of the value of a promissory note and mortgage for the payment of one thousand dollars, by one Imhoff, to the defendant in error, alleged to have been wrongfully converted by the plaintiffs in error. The petition, after setting forth the execution and delivery of these instruments to the defendant in error, states, in substance, that on the 4th day of June, 1874, she deposited them with the plaintiffs in error, who were then engaged in the business of bankers under the firm name of the Lancaster County Bank, as collateral security for a loan of three hundred dollars made by said bank to her son, F. W. Averill. That afterwards, on the 13th day of August, 1874, she again pledged these securities to said bank for a further loan to her son of two hundred dollars. That afterwards, on or about the 10th day of

October, 1874, she offered to pay to the bank, out of moneys which she then had on deposit therein, the full amount due on account of the said loans to her son, and at the same time demanded a return to her of the Imhoff note and mortgage. It is further alleged that said note and mortgage were of the value of one thousand dollars.

The answer sets out with a general denial of all the facts stated in the petition "except that these defendants were partners doing business under the name and style of the Lancaster County Bank." This is followed by the averment that said note and mortgage were brought to said bank by F. W. Averill, and by him deposited as security for the money advanced to him, and in his own name. That when so deposited in said bank said note bore the genuine indorsement in blank of Julia A. Averill, the immediate payee. And that F. W. Averill claimed to be the real owner of the same.

For a further answer it was alleged that afterwards, on the 7th day of August, F. W. Averill, together with one J. H. McMurtry, made an arrangement or agreement, whereby said note and mortgage were to remain in said bank, in escrow, until said McMurtry should deliver to the bank for said F. W. Averill a deed to section one, town nineteen, range eleven, and also deposit to his credit the sum of $360.00, whereupon said bank was to deliver said note and mortgage to said McMurtry. That pursuant to this arrangement the deed was delivered, and the deposit of money made by McMurtry, whereupon the bank handed the note and mortgage over to him as F. W. Averill had directed. To this answer the reply presented a general denial of all the material averments.

Thus were there presented the following questions of fact to be determined by the jury:

*First.* Was Mrs. Averill the owner of the note and mortgage at the time they were delivered to the bank as security for the advances made thereon to her son?

*Second.* It being conceded that said note and mortgage, by whomsoever owned at the time of their delivery, were lawfully held by the bank as security for such advances, if Mrs. Averill were the owner, did she entitle herself to have them returned to her by tendering to the bank the amount then due on such advances?

*Third.* If Mrs. Averill established her right to recover, the measure of damages being the value of the securities, what was their value?

On these issues a general verdict was found in favor of the defendant in error, and her damages assessed at $1,368.75, the full amount called for by the terms of the note, for which judgment was rendered.

Numerous errors are assigned as ground for the reversal of this judgment. But in our examination of the record we have confined ourselves to those on which counsel seemed mainly to rely in their argument at the bar. Pursuing this course, the first point to be noticed is that which relates to the alleged insufficiency of the evidence to sustain the verdict.

As before observed, the petition concedes that the note and mortgage were legally held by the bank as security for certain advances made to F. W. Averill, the only dispute on this point being as to the person by whom they were negotiated to the bank. Now there is no allegation in the petition that these advances to F. W. Averill have been paid, or in any way satisfied; nor, indeed, is there any issue on this point made. This being so, it is manifest that the utmost extent to which the plaintiffs in error could be liable, if at all, is the value of the securities, less the amount due on those advances, together with interest from the

time of conversion. This is the proper rule of damages in this sort of action. *Ripley v. Davis*, 15 Mich., 75. *Clement v. Brown*, 30 Ill., 43. *Crumler v. Oaks*, 38 Vt., 566. *Yates v. Muller*, 24 Ind., 277. *Robinson v. Burrows*, 48 Me., 186. *McCormick v. Penn. Cent. R. R. Co.*, 49 N. Y., 303. It follows, therefore, that in this particular the verdict cannot be sustained. Having conceded that the Imhoff note and mortgage were rightfully held by the bank as security for loans of money made to her son, in order to recover in this action it was incumbent on Mrs. Averill to allege and prove, either a payment, or discharge of the indebtedness so created.

Another error complained of was, in permitting Mrs. Averill to testify that she was the owner of the Imhoff note, against the objection of the plaintiffs. This of course was a mere conclusion of law, to be established by proof of facts necessary to show ownership, and not by the expressed opinion of the witness. *Wedderspoon v. Rogers*, 32 Cal., 569. In view of the fact that not a syllable of legitimate evidence is in the record to show that her claim of ownership was made known to the officers of the bank prior to the alleged conversion, this testimony must have operated strongly to the prejudice of the plaintiffs in error, and is good ground for a new trial.

By Mrs. Averill's testimony, as well as by that of other witnesses, it is shown that at the time the Imhoff note was pledged to the bank, she had already indorsed it to her son. And by her own showing there was nothing either said or done at that time to indicate that F. W. Averill was not the real owner of the note, as the indorsement on the back of it indicated. She says, in substance, that in company with her son, she went to the bank and requested a loan of money to him on that security, and it was granted. That was

all. Not a word was uttered from which the officers of the bank would have been justified in the inference that Mrs. Averill had, or even claimed, the least interest therein. In this state of the proofs she was permitted, against objection, to testify as to when and for what purpose she made the indorsement, thereby contradicting its legal import, and showing herself still the real owner. This testimony was clearly irrelevant and should have been kept from the jury. The officers of the bank, under the circumstances, were not bound to look beyond the indorsement; and as that showed F. W. Averill to be the legal owner, they were at liberty so to treat him until advised to the contrary. *Derharn v. Merchants Ins. Co.*, 11 Met. (Mass.), 199.

Another of the assigned errors is, that on the cross-examination of the witness Hartley, counsel was permitted, against objection, to read from a deposition previously given by the witness, and then to ask him whether he had so testified, without first submitting the deposition to him for inspection. The correct rule of practice in such cases seems to be that where a letter or a deposition signed by the witness is used to contradict him, it must be regularly proved and read as part of the evidence by the cross-examining counsel. After it has been thus proved and read, the witness may be cross-examined as to any supposed discrepancies between his testimony in court and his deposition. 2 Phillips on Evidence, 962, 969. 1 Greenleaf on Evidence, sec. 463, *et seq.* But notwithstanding this rule was violated in the cross-examination referred to, it is evident that no injury could have resulted therefrom. At most it was error without prejudice, for which a judgment will not be disturbed. *King v. Kinney*, 4 Hammond, 81. *Dillon v. Russell*, 5 Neb., 484.

An objection was also interposed to the cross-examination of this witness, as to whether the bank did not

require an indemnifying bond upon the delivery of the Imhoff note and mortgage to McMurtry on the order of F. W. Averill. This objection was well taken. This examination not only had no relation to what had been called out in chief, but the facts elicited were wholly irrelevant to the issues upon which the jury were to decide. But this error was cured by the failure of counsel to stand by their exception. Instead of doing so, they proceeded to re-examine this witness as to the same matter, and actually gave the bond in evidence themselves. This must be taken as a waiver of the former exception.

As to the testimony of the witness Ames, this was wholly irrelevant; so, too, was the transcript of a suit wherein a judgment had been recovered against F. W. Averill, by Groff & Ames, upon a promissory note answering the description of one of those for which the Imhoff note was held as security. Not only was this testimony irrelevant, but, we think it had a strong tendency to mislead the jury, and is therefore good ground for a reversal of the judgment.

In the first instruction to the jury they were told that, "if you further find that said defendants had actual notice that said note was still the property of plaintiff, and you further find that plaintiff was the owner of said note, and that with such notice the defendants surrendered or gave said note to other persons than the plaintiff, at the request of McMurtry, you will find for the plaintiff." As before suggested, there was nothing in what was either said or done by Mrs. Averill, which came to the knowledge of the bank officers, from which they could have inferred that she still retained an interest in the Imhoff note. There was, indeed, no evidence to rebut the presumption arising from her indorsement that it belonged to her son. And the officers of the bank swear positively

that they had no knowledge whatever that the note was hers, or that she claimed it, until after its delivery to McMurtry by order of the indorsee.

Again, there was no competent testimony before the jury that she was in fact the owner of the note. It is true she swore she was "the owner," but this was a mere conclusion of law, and improperly admitted against the objection that it was incompetent. This instruction was erroneous, because it left the jury at liberty to infer that there was evidence from which they could rightfully find that Mrs. Averill was the owner of the securities, and that the officers of the bank were aware of her ownership. *Meredith v. Kennard,* 1 Neb., 312. *Meyer v. The Midland Pacific R. R. Co.,* 2 Neb., 319. The second and third instructions are liable to the same objection.

The alleged error of the court in limiting the argument of counsel to the jury "to one hour and ten minutes, while allowing to the opposing counsel two hours," cannot be sustained. It does not appear that any complaint was made to the court when the order was announced, nor at any time during the trial, of the insufficiency of the time allowed for a full and satisfactory discussion of the evidence before the jury. Neither does it appear that an exception was taken to the action of the court in this particular. The first notification of dissatisfaction which the court had was in the motion for a new trial. This was too late to complain. If the order were actually prejudicial to the party thus limited, the court should have been so advised before the close of the argument, and then, if the limitation were enforced, an exception should have been taken and preserved by bill of exceptions. This is the only way in which a question of this sort can be preserved for re-examination in this court.

And what we have just said of the limitation of the

argument to the jury is entirely applicable to the objection that counsel were permitted to comment on facts not in evidence, and "to travel outside the record for abusive epithets with which to stigmatize defendants, and excite the prejudice of the jury." If what is charged to have been said by counsel be true, it was certainly a very wide departure from the rules of forensic discussion, cannot be too severely censured, and if properly presented would be good ground for the reversal of the judgment. But it is not shown that the offending counsel was called to order by his adversary, nor that the court was requested to confine counsel within the bounds of legitimate discussion. In fact there is nothing in the record to show to this court, in a legitimate way, that the offense was committed. To have raised a question on this point for this court to decide there needed to be an adverse ruling of the court below, and an exception thereto, and these should have been made a part of the record by a proper bill of exceptions.

For the errors herein stated, the judgment of the court below is reversed and a new trial awarded.

REVERSED AND REMANDED.